22-MJ-6225-MPK

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Eric Mercer, being duly sworn, state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have worked there since January 2020. I am currently assigned to the Bridgewater, Massachusetts, Field Office. Prior to my employment with the ATF, I was employed as a Trooper with the New Hampshire State Police from 2018 to 2020. During my time there, I received training and experience conducting numerous motor vehicle and criminal investigations. As an ATF Special Agent, I have received training and gained experience regarding investigations involving firearms and narcotics trafficking and the possession of firearms by prohibited persons, including felons, gang members, parolees, narcotics users and narcotics traffickers. As a result of my training and experience, I am familiar with methods commonly utilized by firearms and narcotics traffickers in conducting their business.

2. I have participated in various aspects of firearms and narcotics investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and the debriefing of defendants, informants, and witnesses who had personal knowledge regarding firearms and narcotics trafficking organizations.

3. I submit this affidavit in support of a criminal complaint charging William VIERA (DOB XX/XX/1989) with dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show that there is probable cause that the above-listed crimes have been committed and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### Background of Investigation

5. Beginning in around November 2021, ATF has interviewed an individual, "CW",[1] about criminal activity, including illegal firearms trafficking, in Massachusetts. CW advised agents that VIERA was involved in the manufacturing and dealing of privately made firearms ("PMFs"), as well as the dealing of commercially manufactured ammunition, in the area of Taunton, Massachusetts. As described below, VIERA was previously convicted of a felony and is prohibited from possessing any firearms or ammunition.

6. Based on my training and experience, I know that a PMF—sometimes referred to as a "ghost gun"—is a firearm assembled or otherwise produced by a person other than a licensed manufacturer, often without a serial number. Individuals can privately manufacture both handguns and long guns. One method involves using unfinished frames or receivers, which are then machined or otherwise modified into a completed and fully functional firearm. Another method involves using 3D printers to create the frame or receiver that is then manufactured into a functioning firearm.

---

[1] The identity of CW is known to me but anonymized here because I believe disclosure would be dangerous to CW's safety and detrimental to effective law enforcement. CW has previously provided accurate and reliable information in criminal investigations, including information about criminal activity that was not publicly known at the time that was subsequently corroborated by investigators. In the course of this investigation, CW has participated in at least three controlled purchases of firearms from VIERA that were recorded. CW agreed to cooperate with law enforcement in hopes of receiving consideration on pending charges in Massachusetts state court for firearms offenses. CW has prior criminal convictions from about ten years ago, including breaking and entering, destruction of property, and possession of a controlled substance. I believe the information provided by CW to be reliable.

7.      At the direction of law enforcement, in around April 2022, CW communicated with VIERA via Facebook about PMFs. I have personally reviewed the Facebook conversation between CW and VIERA and I am familiar with the terminology used in the conversation to discuss firearms and PMF manufacturing. The following describes some of the messages from this Facebook conversation from April 27, 2022, to April 28, 2022: [2]

　　a. VIERA sent a message to CW stating, "I got a 3d printer so I've been printer so I've been fucking around with the settings and I got a ar 9 on the plate printing right now. Going to see how it turns out. 1st one was trash. 2nd was a lot better. Now this one seems to be coming out perfect so I'm probably going to build it." Based on my training and experience, I believe "ar 9" to be in reference to the receiver to an AR platform rifle or pistol, chambered in 9mm caliber ammunition.

　　b. VIERA sent a message to CW stating that he purchased a 3D printer because, "I figured I had to buy one cuz they passing the lays soon. U can't buy a lower without a fid now they have to go to a ffl." Based on my training and experience, I believe that a "lower" refers to a frame or receiver, and a "ffl" refers to a federal firearms licensee.[3]

　　c. VIERA sent a message to CW stating, "I got a few 40s now. Not a single 9… And the ar 300 blackout." Based on my training and experience, I believe "a few 40s" to be in reference to .40 caliber firearms; "a single 9" to be in reference to a 9mm firearm; and "ar 300 blackout" to be in reference to an AR platform rifle or pistol chambered in 300 blackout caliber ammunition.

---

[2] All spellings and abbreviations in quotes are reproduced verbatim from the Facebook messages.
[3] On April 26, 2022, ATF published a final rule that, among other things, amended its regulations that define "frame or receiver." That final rule becomes effective on August 24, 2022.

    d. VIERA sent a message to CW stating, "Bro I made a 23 last week for a toltal of 350 with a 33 rnd clip included. Got it off for a band." Based on my training and experience, I believe this statement to mean that VIERA manufactured a Glock 23 style PMF ("a 23") for approximately $350, and he completed a sale of the firearm, with a 33-round magazine ("a 33 rnd clip"), for $1,000 ("a band").

    e. VIERA also sent CW photos during the conversation, including: (i) a photo of a 3D printer; (ii) a photo that depicts what appears to be a PMF frame, affixed to a Glock Model 27, .40 caliber pistol slide; and (iii) a photo that depicts what appears to be a PMF with a large-capacity magazine inserted into the magazine well, on a table next to a 50-count box of Blazer brand ammunition.

8. In or around June 2022, CW met with VIERA at his residence in Taunton, Massachusetts, on multiple occasions. At least twice, CW observed VIERA in possession of a Glock-style PMF carried on VIERA's person. VIERA also showed CW a completed PMF frame and indicated he was going to sell the firearm to another party.

9. Based on my review of criminal history records, I am aware that VIERA has multiple prior convictions for felonies. In 2012, VIERA was convicted in Bristol Superior Court of armed robbery and sentenced to 2 to 5 years of imprisonment. Accordingly, VIERA is prohibited from possessing any firearm or ammunition. In addition, investigators have searched the ATF Federal Licensing System and determined that VIERA has never applied for or been awarded a federal firearms license.

### July 15, 2022, Controlled Firearm Purchase

10. At the direction of investigators, CW arranged to purchase a PMF from VIERA. On or about the week of July 4, 2022, CW communicated with VIERA via phone number ending

in 8056, and VIERA told CW that he had ordered parts for a Glock 27 style PMF. On July 11, 2022, VIERA texted CW to inform CW that the parts had shipped, and VIERA sent CW a United States Postal Service tracking number. On July 14, 2022, VIERA informed CW that VIERA had received the shipment of parts, and that VIERA expected to complete the firearm by the following day. In the evening of July 14, 2022, VIERA sent three photographs of what appeared to be a completed PMF to CW. On July 15, 2022, CW confirmed with VIERA that the PMF was completed and arranged to purchase the PMF from VIERA that day at VIERA's residence in Taunton, Massachusetts, for $800.

11.     On July 15, 2022, ATF agents and personnel from the Taunton Police Department met with CW at a pre-determined location to conduct a pre-operational briefing. CW was equipped with electronic surveillance equipment to record and monitor the transaction, and $800 of government funds to purchase the firearm from VIERA. Prior to departing the pre-determined location, agents searched CW and CW's vehicle and confirmed that there was no other currency or contraband.

12.     Investigators maintained constant surveillance of CW from the pre-determined location to VIERA's residence, and the entire transaction was audio and video recorded. Upon arrival at the residence, CW parked in the driveway; shortly thereafter, VIERA exited the residence holding a child and a manilla envelope containing the firearm. VIERA proceeded to CW's vehicle and provided CW with the manila envelope in exchange for $800 in government funds. Following a brief conversation, CW departed the residence. Investigators maintained constant surveillance of CW back to a pre-determined location.

13.     Upon arrival at the pre-determined location, CW provided agents with a manila envelope containing a Polymer 80 PF940SC, 9mm pistol, with no ammunition and no magazine.

Investigators again searched CW and the vehicle, and did not find any other contraband or currency.

### August 1, 2022, Controlled Firearm Purchase

14. At the direction of investigators, on or about the week of July 22, 2022, CW communicated with VIERA via phone number ending in 8056 to arrange the purchase of another PMF from VIERA. On July 28, 2022, VIERA informed CW that he had he had completed manufacturing the PMF frame, but the distributor had sent the wrong model slide to fit the frame. VIERA texted photographs to CW of what appeared to be a completed PMF frame with pink stippling along the grip. VIERA also told CW he had ordered the parts for a different Glock 19 style PMF that he intended to sell to another individual to whom VIERA had previously sold a PMF. On July 30, 2022, VIERA texted CW stating that he had completed the Glock 19 style PMF intended for another individual, but VIERA did not have a magazine for firearm and the other individual wanted to purchase the firearm with a magazine, so VIERA offered to sell the Glock 19 style PMF without a magazine to CW. At the direction of investigators, CW arranged to purchase the Glock 19 style PMF without a magazine for $700. On August 1, 2022, CW communicated with VIERA to confirm the purchase of the PMF at VIERA's residence that day for $700.

15. On August 1, 2022, ATF agents and personnel from the Taunton Police Department met with CW at a pre-determined location to conduct a pre-operational briefing. CW was equipped with electronic surveillance equipment to record and monitor the transaction, and $700 of government funds to purchase the firearm from VIERA. Prior to departing the pre-determined location, agents searched CW and CW's vehicle and confirmed that there was no other currency or contraband.

16. Investigators maintained constant surveillance of CW from the pre-determined location to VIERA's residence, and the entire transaction was audio and video recorded. Upon arrival at the residence, CW parked in the driveway; shortly thereafter, VIERA exited from the rear of the residence holding a child and a manila envelope containing the firearm. VIERA put down the child, approached the driver's side window of CW's vehicle, and provided CW with the manila envelope in exchange for $700 in government funds. Following a brief conversation, CW departed the residence. Investigators maintained constant surveillance of CW back to a pre-determined location.

17. Upon arrival at the pre-determined location, CW provided agents with a manila envelope containing a Polymer 80 PF940C, 9mm pistol, with no ammunition and no magazine. Investigators again searched CW and the vehicle, and did not find any other contraband or currency.

### August 8, 2022, Controlled Firearm Purchase

18. On August 5, 2022, VIERA texted CW, from the phone number ending in 8056, stating that he received the correct slide for the PMF that CW had previously arranged to buy, and that the PMF was now complete. VIERA sent CW photographs of the completed PMF with pink stippling along the grip. At the direction of investigators, CW arranged to purchase the completed PMF from VIERA on August 8, 2022, at VIERA's residence in Taunton.

19. On August 8, 2022, ATF agents and personnel from the Taunton Police Department met with CW at a pre-determined location to conduct a pre-operational briefing. CW was equipped with electronic surveillance equipment to record and monitor the transaction, and $850 of government funds to purchase the firearm from VIERA. An ATF Task Force Officer ("TFO"), acting in an undercover ("UC") capacity, accompanied CW during the transaction. TFO was also

equipped with electronic surveillance equipment and provided with a UC vehicle for the transaction. Prior to departing the pre-determined location, agents searched CW and the UC vehicle and confirmed that there was no other currency or contraband.

20. Investigators maintained constant surveillance of the UC vehicle with CW and TFO from the pre-determined location to VIERA's residence, and the entire transaction was audio and video recorded. Upon arrival at the residence, VIERA was already outside in the driveway. VIERA approached the passenger side of the UC vehicle with a manila envelope. CW and TFO engaged VIERA in conversation and VIERA handed the manila envelope containing the firearm to CW through the UC vehicle window. CW asked VIERA if he had ammunition for the firearm, and VIERA produced two rounds of .40 caliber ammunition from his pocket and handed the ammunition to CW. CW paid VIERA $850 government funds for the firearm and ammunition. CW and TFO then departed the residence in the UC vehicle. Investigators maintained constant surveillance of the UC vehicle with CW and TFO back to a pre-determined location.

21. Upon arrival at the pre-determined location, CW provided agents with a manila envelope containing a Polymer 80 PF940SC, .40 caliber pistol, with two rounds of Winchester S&W ammunition. Investigators again searched CW and the UC vehicle, and did not find any other contraband or currency.

### Inspection of the Privately Made Firearms

22. ATF Special Agent Patrick Briody has examined each of the three PMFs purchased from VIERA on July 15, August 1, and August 8, 2022. Special Agent Briody has determined that each of the PMFs are firearms as defined in Title 18, United States Code, Chapter 44, Section 921(a)(3). ATF has also successfully test fired each of the PMFs.

## CONCLUSION

23.     Based on the foregoing, I submit that there is probable cause to believe that, from at least April 2022 until August 8, 2022, in Taunton, in the District of Massachusetts, William VIERA, not being a licensed importer, manufacturer, and dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms, including by offering for sale and selling at least three firearms, in violation of 18 U.S.C.§ 922(a)(1)(A).

Respectfully submitted,

/s/ Eric H. Mercer

Eric H. Mercer, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to telephonically pursuant to Fed. R. Crim. P. 4.1, on August 17, 2022

_____
HONORABLE M. PAGE KELLEY
CHIEF UNITED STATES MAGISTRATE JUDGE

